**RUSSELL BROWN**, CSB 297991
RBX LAW, PC
924 Anacapa St., Ste. 1-T
Santa Barbara, CA 93101
(805) 635-7766 / (805) 283-7564 facsimile
Email: rablaw805@gmail.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN EMANUEL LOCOCO,<br><br>Plaintiff,<br>vs.<br><br>LOS ANGELES CITY, LOS ANGELES WORLD AIRPORTS, LOS ANGELES AIRPORT POLICE., LOS ANGELES POLICE DEPARTMENT, OFFICER ALVARADO, OFFICER GARAY, SGT. FAYTOL, and DOES 3 through 10,<br><br>Defendants. | Case No.: 2:23-cv-09963-RGK-MRWx<br><br>**SECOND AMENDED COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>**<br><br>Complaint Filed: November 26, 2023<br>FAC Filed: January 26, 2024 |

## NATURE OF THE ACTION

1. This is an action on behalf of Juan Emanuel Lococo, who has a back condition that limits his mobility and is morbidly obese. Mr. Lococo was injured by police officers employed by the City of Los Angeles when Sgt. Faytol shoved him into the back seat of a patrol vehicle. Faytol continued to use force on Plaintiff despite Plaintiff's protests and cries of pain. This Complaint states causes of action under federal and state law for violation of civil rights. It also states causes of action in tort under common law.
2. Plaintiff has complied with the tort claims act (Government Code § 910 et seq.) by filing a claim with the City of Los Angeles within 6 months. Plaintiff's claim was denied on May 26, 2023. This action was filed on November 26, 2023.

## PARTIES

3. At all times relevant hereto Plaintiff Juan Emanuel Lococo was and is a resident of the City of La Mirada, County of Los Angeles.

4. At all times material herein, defendant City of Los Angeles ("The City") was and is a public entity duly organized under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents and the employees, and agents of the Los Angeles World Airports Department and the Los Angeles Airport Police Department.

5. At all times material herein, defendant Los Angeles Airport Police Department was and is a public entity responsible for providing training for law enforcement officers employed by the City, including officers employed as law enforcement officers at Los Angeles World Airports and the Los Angeles Airport Police Department. The officer defendants and DOE officers named in this complaint were trained by the Los Angeles Police Department.

6. At all times material herein, defendant Los Angeles World Airports was and is a department of the City of Los Angeles and is a public entity responsible for the

management, supervision, and control of all airports and airport facilities under the jurisdiction of the City of Los Angeles, including Los Angeles International Airport. Los Angeles World Airports is also responsible for management, supervision, and control of the Los Angeles Airport Police Department and its employees.

7. At all times material herein, defendant Los Angeles Airport Police was and is a public entity responsible for providing law enforcement services at Los Angeles International Airport and the surrounding areas.

8. At all relevant times, defendants Faytol, Alvarado and Garay were acting within the course and scope of their official duties as duly appointed police officers employed by The City at the Los Angeles Airport Police Department.

9. Upon information and belief, DOES 3-10 were each responsible in some manner for the injuries and damages alleged herein. The true names and identities are presently unknown by Plaintiff and Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this civil rights action arises under federal law, *see* 29 U.S.C. § 794, 42 U.S.C § 1983 and 42 U.S.C. § 12131 et seq. The court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 and principles of pendent and/or ancillary jurisdiction.

11. This court has *in personam* jurisdiction over Defendants because they are located in, conduct operations within, transact business in and provide services within the City of Los Angeles and their principal place of activity and operations is located in the City of Los Angeles, Los Angeles County, California.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside there.

**BACKGROUND**

13. On August 9, 2022, Plaintiff was working as a taxi cab operator at LAX airport. Plaintiff picked up two passengers at LAX-it. Plaintiff and one of his passengers had a dispute and Plaintiff drove to the Los Angeles Airport Police Department station located at 9160 S. Loyola Blvd.

14. Officers Alvarado, Garay, and Faytol responded from inside the station and decided to arrest Plaintiff for false imprisonment.

15. Plaintiff advised Alvarado and Garay that he is mobility impaired. Plaintiff's lack of mobility was also readily apparent to officers because he is morbidly obese and had a cane that he uses to walk. Plaintiff requested a wheel chair but officers did not provide this accommodation. Instead, Officers ordered Plaintiff to exit his vehicle and walk to a patrol car. Officers threatened to tow Plaintiff's taxi if he did not get into their patrol vehicle.

16. Plaintiff lost his balance and began to fall multiple times as he walked to the patrol vehicle. Plaintiff told Sgt. Faytol that he needed assistance to walk. Faytol held Plaintiff's arm and walked Plaintiff to the patrol vehicle.

17. Plaintiff's mobility is impaired because he had a laminectomy in approximately November 2015 and because he is morbidly obese. Plaintiff's laminectomy involved the removal of the lamina from C-4 to T-11 vertebrae. It also involved the placement of rods and pins into his spine. As a result, Plaintiff has difficulty walking, gets spasms in his back after being seated for a long time (like when driving), and sometimes has difficulty with balance. Additionally, because his spine is locked straight, his body cannot bend or contort normally.

18. Plaintiff told Sgt. Faytol several times that he would not fit in the back of the patrol vehicle due to his obesity and that he would not be able to get into that vehicle due to his back condition. Plaintiff told Faytol that he had received a laminectomy and explained to Faytol that half of his spine is metal cannot bend the

in the ways needed to get into the patrol vehicle.

19. Plaintiff asked Sgt. Faytol to get a full size Chevy Tahoe or an 11-passenger van instead. Those vehicles were available to Officers at the time of Plaintiff's arrest and could accommodate Plaintiff's medical needs. Sgt. Faytol insisted that Plaintiff get into the patrol vehicle and repeatedly refused Plaintiff's request to be placed into an alternative transport. Plaintiff advised Faytol that his body could not bend or contort due to his back condition. Sgt. Faytol told Plaintiff that he runs the show and that Plaintiff is not in charge.

20. Plaintiff thought that Sgt. Faytol would abandon his plan to force Plaintiff into the patrol vehicle once he saw that Plaintiff could not get in due to Plaintiff's size and back condition. Plaintiff started getting into the right rear door of the patrol vehicle, however his cane slipped and fell into the crevice between the door and the car. Plaintiff was able to get his torso partially onto the back seat, but when he did so, his leg became jammed between the door and the car. Plaintiff was screaming in pain because his knee was stuck.

21. Plaintiff noticed that Sgt. Faytol was becoming angry and frustrated at this point. Sgt. Faytol ignored Plaintiffs cries of pain and started to jam Plaintiff into the vehicle by pushing Plaintiff's hip. Plaintiff believes Faytol was trying to push Plaintiff into the vehicle so that Plaintiff was lying down across the back seat. A female officer was standing adjacent to Plaintiff and Faytol. This officer observed Plaintiff's cries of pain and asked Sgt. Faytol what he was doing to Plaintiff and why Plaintiff was screaming. Sgt. Faytol told the female officer that Plaintiff was stuck. Sgt. Faytol continued to push Plaintiff into the vehicle despite Plaintiff's cries of pain. Neither the female officer nor Sgt. Faytol, nor any of the officers nearby summoned medical care or rendered aid to Plaintiff at that time.

22. Plaintiff leaned back onto the seat bottom and was pushed further into the vehicle by Sgt. Faytol. This relieved some of the knee pain but caused Plaintiff to

become further stuck in the patrol vehicle - between the seat bottom and the cage (that separates the front compartment of the vehicle). Plaintiff continued to cry out in pain.

23. Sgt. Faytol kept telling Plaintiff to slide in and used excessive force to push Plaintiff into the vehicle. Faytol's pushing caused Plaintiff to become firmly wedged between the seat bottom and the cage. The seat bottom was jabbing Plaintiff in the back, causing pain to Plaintiff's spine area. This resulted in permanent injury to Plaintiff's back. Plaintiff was not on the ground because he is too large to fit on the floor between the back seat and the patrol vehicle. Plaintiff continued to scream in pain.

24. Plaintiff attempted to free himself by grabbing the cage to lift himself up. Plaintiff was able to temporarily get himself free from between the seat and cage. However, this shifted the pressure and pain to Plaintiff's knee. Plaintiff continued to attempt to free himself and was alternating between the pain in his back and the pain in his knee.

25. Sgt. Faytol continued to ignore Plaintiff's distress and remained determined to physically push Plaintiff all the way into the vehicle. Faytol told Plaintiff to slide into the vehicle. Sgt. Faytol was above Plaintiff and pushed Plaintiff into the vehicle. Plaintiff grabbed around Sgt. Faytol's waist in order to pull himself up out of his stuck position. Sgt. Faytol removed Plaintiff's arms and Plaintiff let go of Faytol because he was concerned Faytol would think Plaintiff was attempting to harm him or grab his weapon.

26. Eventually Faytol abandoned his efforts to push Plaintiff into the vehicle and Plaintiff was able to remove himself from his stuck position by grabbing the cage and exerting all of his effort to pull himself up. Plaintiff's knee got unstuck once he got upright and he fell to the ground outside the patrol vehicle. While Plaintiff was trying to get unstuck from inside the patrol vehicel, Faytol stood by and did not help

Plaintiff. Due to Faytol's excessive force on Plaintiff, Plaintiff suffered injury to his back, chest, and leg. Plaintiff felt pain and numbness, hyperventilated, and nearly blacked out from the pain and stress of being stuck, and the energy he exerted to free himself. Plaintiff was under great distress and suffered severe emotional and physical pain and suffering. Plaintiff has been traumatized by these events and his life has been drastically and forever changed for the worse. Plaintiff is scared of Officers because of what they did to him and out of fear of retaliation from Officers because of this lawsuit.

27. Multiple officers were present and observed Faytol's actions and heard Plaintiff's cries of pain. Plaintiff pleaded with officers not to hurt him anymore. However, none of the officers interceded to stop Faytol or render aid to Plaintiff. Plaintiff continued to complain to officers that he was in pain. Once Plaintiff freed himself from the patrol vehicle, Officers finally requested an ambulance for Plaintiff and Plaintiff was transported to Marina Del Rey Hospital. Medical staff told Officers that they had injured Plaintiff and that Plaintiff would need to be admitted to the hospital. Officers gave Plaintiff a citation and left Plaintiff under the care of the Marina Del Rey Hospital. Sgt. Faytol and Officers' failure to render aid when they heard Plaintiff crying in pain, and failure to immediately summon medical care showed deliberate indifference to Plaintiff's serious medical needs and increased Plaintiff's physical and emotional injuries.

28. Plaintiff was treated at Marina Del Rey Hospital (Cedars Sinai) and LA+USC. Plaintiff suffered permanent injury to his back, specifically a bulging disc in his lumbar that causes significant pain, weakens his bladder control, and further limits his mobility. Plaintiff incurred significant medical bills for treatment of his injuries, which included approximately 10 days of hospitalization. Plaintiff has had urinary tract infections as a result of his loss of bladder control that is caused by the bulging disc. This has resulted in further hospitalizations and medical bills.

29. Plaintiff suffered several weeks of lost wages during hospitalization and recovery. Plaintiff has incurred other costs, including prescription medication and transportation.

30. Plaintiff's taxi was towed and Plaintiff had to pay to get his taxi out of the tow yard.

**COUNT 1**

**(Denial of Constitutional Rights)**

31. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully and alleged herein.

32. Defendants acted under color of statute, ordinance, regulation, custom, or usage of a State.

33. As set forth above, Defendants denied Plaintiff full and equal protection of all laws as is enjoyed by non-disabled citizens. Defendants actions violated the 4th, 8th, and 14th Amendments to the United States Constitution, 42 U.S.C. § 1983 and the laws of the State of California, including but not limited to Cal. Civ. Code §§ 52 and 54.

34. Specifically, Defendants used excessive force, failed to accommodate Plaintiff's disability as required by the Americans with Disabilities Act and state law, failed to promptly summon medical care, and failed to afford him due process of law.

35. Sgt. Faytol acted unreasonably by physically forcing Plaintiff into a vehicle that could not accommodate Plaintiff's medical conditions and by continuing to do so when Plaintiff became stuck and was in obvious distress and pain. Officers acted unreasonably by listening to Plaintiff crying out in pain for a substantial period of time without summoning medical care. A reasonable officer would not have acted as these Officers did with respect to Plaintiff.

36. Officers are not entitled to qualified immunity against Plaintiff's state law allegations.

37. As a direct and proximate cause of the foregoing conduct, Plaintiff suffered damages involving extreme and grievous physical, emotional, and psychological trauma, all to his detriment. Plaintiff also suffered additional damages as described in paragraphs 26-30.

38. The actions described herein clearly violate established statutory and constitutional norms and it was not objectively reasonable for the officers involved to have believed their conduct would be legal.

39. Officers' actions in violation Plaintiff's constitutional rights were pursuant to the longstanding policies, practices, and/or procedures, including The City, LAPD, Los Angeles World Airport and Los Angeles Airport Police Department's standard operating procedures and accepted practices with respect to persons who are morbidly obese and/or mobility impaired due to back injuries. These public entity defendants failed to train, supervise, and discipline their officers from harming the public unnecessarily based on their back conditions, immobility and/or obesity. Public entity defendants failed to train, supervise, and discipline their officers in properly transporting or providing reasonable accommodations for person with back conditions, mobility disabilities and/or obesity.

40. Specifically, Defendants official policy is to require a person with mobility limitations to request an ambulance for transportation. If an ambulance is not requested, the person is transported in a patrol vehicle. The policy does not require Defendants to advise a person that they could be transported in an ambulance. The policy does not require officers to ask if a person needs to be transported in an ambulance or some other reasonable accommodation. Therefore disabled persons like Plaintiff are unaware that an ambulance is an option.

41. In addition, Defendants have no official policy regarding how officers should use force or reasonably accommodate morbidly obese persons or persons with back

conditions. Therefore, Officers received no training on how to interact with persons with these disabilities.

42. If the officers in this case had been properly trained, they would have known that they should not forcibly shove persons with back conditions and/or morbidly obese persons, such as Plaintiff, into a regular sized patrol vehicle that cannot accommodate their size. If officers had been properly trained, they would have known to provide a reasonable accommodation to Plaintiff. If officers had been properly trained, they would have provided the reasonable accommodations that Plaintiff requested or made some other reasonable accommodation, such as cite-releasing Plaintiff.

43. Public entity defendants failure to train Officers regarding the use of force, arrest and transportation of persons who are morbidly obese and/or have back conditions indicate deliberate indifference toward Plaintiff and persons with disabilities, in violation of federal law.

44. Public entity defendants failure to train was a direct and proximate cause of Plaintiff's injuries.

45. The public entity defendants are liable for the intentional misconduct of their police officers acting in the scope of their official duties under theories of agency and respondent superior because they are aware that officers engage in the conduct described herein and failed to properly hire and train officers in order to prevent the violation of constitutional and state law rights (Cal. Gov. Code § 815.2).

## COUNT 2

### (Discrimination based on Disability under State and Federal Law)

46. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully and alleged herein.

47. 42 U.S.C. § 12131 et seq., the Americans with Disabilities Act of 1990, The Rehabilitation Act 29 U.S.C. § 794, and California Civil Code § 54 et seq. prohibit

discrimination by police officers against those with physical mobility disabilities.

48. The Rehabilitation Act pursuant to § 504 provides, "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency[.]" 29 U.S.C. § 794.

49. Plaintiff is a qualified individual with a disability under the law.

50. Defendants City of Los Angeles and its subordinate entities (LAPD, Los Angeles World Airports, and Los Angeles Airport Police Department), are public entities that receive federal funding and are subject to Title II of the ADA and the Rehabilitation Act.

51. Officer defendants regarded Plaintiff as being disabled as they knew Plaintiff had a back condition that limited his mobility and that he was morbidly obese.

52. Plaintiff was entitled to the same law enforcement services that Defendants provide to other non-disabled persons.

53. Specifically, Plaintiff was entitled to the benefit of a lawful exercise of police powers, including but not limited to the right to not be subjected to an unlawful discrimination.

54. Defendants discriminated against Plaintiff because of his disability and failed to provide reasonable accommodation. Specifically, Plaintiff requested that officers reasonably accommodate his morbid obesity by placing him in a Chevy Tahoe or 11-seat van. Defendants also could have accommodated Plaintiff by cite-releasing him, or by using an ambulance to transport him. All four of these options were available to Defendants and would have been a reasonable accommodation based on Plaintiff's disabilities. Defendants did not provide Plaintiff with any of these accommodations. In fact, Defendants refused Plaintiff's requests for reasonable

accommodation. Sgt. Faytol became upset that Plaintiff was requesting accommodation for his disability and acted out of anger and frustration by retaliating against Plaintiff with force.

55. Defendants' actions were taken under circumstances giving rise to an inference of discrimination. Defendants actions were intentional discrimination and/or deliberate indifference to Plaintiff's rights.

56. As a direct and proximate cause of the foregoing conduct, Plaintiff suffered damages involving extreme and grievous physical, emotional, and psychological trauma, all to his detriment. Plaintiff also suffered damages as described in paragraphs 26-30.

## COUNT 3

## (Intentional Infliction of Emotional Distress)

57. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully and alleged herein.

58. The acts herein complained of constitute extreme and outrageous conduct undertaken with an intent to cause, or with a reckless disregard of the substantial probability of causing severe emotional distress to Plaintiff, and these acts did in fact cause Plaintiff severe emotional distress.

59. Specifically, Defendants' officers, during the course of their duties, undertook a course of conduct designed to cause emotional and physical distress to Plaintiff for no other purpose than to inflict such suffering. Defendant Faytol exhibited extreme and outrageous conduct by acting out of anger and frustration and physically forcing Plaintiff into a patrol vehicle that could not accommodate Plaintiff and that Plaintiff was physically unable to get into. Faytol's continued pushing of Plaintiff into the patrol vehicle while Plaintiff was screaming in agony is conduct that cannot be tolerated in a civilized community.

60. Defendants' actions, being taken in the context of official police authority, and

being directed against a helpless victim, were so outrageous as to exceed the bounds tolerated by society.

61. As a direct and proximate cause of the foregoing conduct, Plaintiff suffered damages involving extreme and grievous physical, emotional, and psychological trauma, all to his detriment. Plaintiff also suffered the damages described in paragraphs 26-30.

62. The City is liable for the actions of its police officers under theories of agency and respondeat superior. This liability is further based on The City's, LAPD's, Los Angeles World Airports' and Los Angeles Airport Police Department's longstanding policies and practices and failure to train and supervise its employees with respect to the accommodation of disabled persons, as previously described herein.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory and punitive damages in an amount according to proof;

2.Injunctive relief against the the City of Los Angeles commanding those entities to provide mobility assistance or otherwise modify its policies with respect to use of force, arrest, and transportation of persons who have back conditions, are mobility-impaired, or are morbidly obese.

3.Attorney's fees and costs pursuant to Title 42, U.S.C. § 1988, Cal. Civil Code § 55, Cal. Civ. Proc. Code § 1021.5, California's private attorney general doctrine, and any other appropriate statute;

4.Costs of suit; and

5.Such other and further relief as the court deems appropriate and just.

DATED: May 27, 2024

**RUSSELL BROWN**
Attorney for Plaintiff

s/ Russell Brown

By______________________________________

Russell Brown

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: May 27, 2024

**RUSSELL BROWN**
Attorney for Plaintiff

s/ Russell Brown

By______________________________
Russell Brown

¶